IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 09-13-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NOTICE OF PROPOSED |
| | ) | ORDER |
| | ) | |
| LAWRENCE JOHN SHEEHAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  Introduction

Defendant Lawrence John Sheehan pleaded guilty to one count of

Transportation of a Minor, in violation of 18 U.S.C. § 2423(a).  Upon receipt of

the Presentence Report, Defendant filed objections to it.  These objections turn on

when the offense took place for sentencing purposes, and whether his federal

sentence should be adjusted and run concurrently with his state conviction for

incest.  This Notice reflects my thinking about questions to be argued at the

October 28, 2009 Sentencing Hearing.

## II.  Factual Background

The following is a synopsis of the facts[1] taken from the Presentence Report:

Defendant married the victim's Mother in May of 1999.  Defendant, the victim and Mother moved to Montana (near Hungry Horse) in August of 1998.  While living in Montana, Defendant initiated inappropriate physical contact with the victim that consisted of the victim having to blow into a cardboard tube with his penis inside.[2]  She was 12 years old at the time.  In late 1999 or early 2000, Defendant, the victim and Mother relocated to New Mexico, following his arrest for driving under the influence.  While in New Mexico, Defendant initiated sexual contact with the victim.  In the summer of 2000, all three were in the process of moving to Arizona, but before they crossed into Arizona they were in a car accident.  While investigating the accident, New Mexico State Police learned that Defendant was wanted by Arizona authorities for a parole violation.  He was transferred to Arizona and spent time in prison there until March of 2001.  During this time, the mother and victim moved to Tucson, Arizona, to be closer to Defendant.  Upon release from prison, sexual contact between the Defendant and victim restarted, and quickly escalated to sexual intercourse.  Defendant, victim and mother remained in Arizona until June of 2002, at which time they moved to Idaho.  In August of 2002, the family moved to Montana.  The sexual intercourse between Defendant and the victim continued throughout these moves, and after arriving in Montana she became pregnant at the age of 15.  The sexual contact continued until the victim and Mother left Defendant in September of 2005.

---

[1]The victim testified at the hearing held on October 15, 2009.  Her testimony was mostly consistent with the Presentence Report.  See fn.2.

[2]At trial, the witness testified that the sexual abuse started in New Mexico in 2000, and made no mention of "inappropriate physical contact" initiating in 2000 while in Montana.

Defendant was charged with incest by the State of Montana.  He pleaded guilty to the charge, and was sentenced on October 27, 2008 to Montana State Prison for 25 years, with 10 years suspended.

Subsequently, the United States obtained an indictment charging Defendant with Transportation of a Minor (Count I), in violation of 18 U.S.C. § 2423(a), and Travel with Intent to Engage in Illicit Sexual Conduct (Count II), in violation of 18 U.S.C. § 2423(b).  Count I charged that from approximately 1999 to 2003 Defendant transported the victim in interstate commerce with intent to engage in illegal sexual activity.  He pleaded guilty to Count I.  At the change of plea hearing Defendant's counsel challenged the temporal component of the charge. Defense counsel stated the elements of the charge were met when Defendant moved to Montana in 2002, "not anything predating that."  There was no written plea agreement.

Relying upon the indictment, the Presentence Report treated 1999 as the date the offense began and 2003 as the date the offense ended.  Using those dates, the Presentence Report calculates the offense level at 20 and Defendant's criminal history as category VI.   The corresponding guideline range is 70 to 87 months.

The Defendant makes seven objections to the Presentence Report.  (1) He objects to the Report's use of 1999 through 2003 as the time of the offense.  He

argues that the offense occurred only when he moved to Montana, in 2002.  (2) He argues that the 2001 or 2002 edition of the Guidelines Manual applies, not the 2003 edition, and that his sentence should be adjusted and run concurrently to his state conviction.  (3) and (4) He argues that his criminal history was miscalculated because the 15 year rule in U.S.S.G. § 4A1.2(e) does not apply if the offense did not begin until 2002.  (5) He contends the Presentence Report incorrectly determined the instant offense to have occurred while he was on parole.  (6) Based on the above objections, he contends the criminal history should be category IV. (7) Based on this lower criminal history category, he calculates the Guidelines sentencing range to be 51 to 63 months.

### III.  Objections

A.  <u>When did the Offense Begin and End?</u>

Defendant objects to the Presentence Report using 1999 through 2003 as the time frame for the instant offense.  At the change of plea hearing, Defendant's counsel stated he did not consider conduct pre-dating 2002 to be part of the offense.[3]  Defendant reiterated this objection in his Sentencing Memorandum.  He

---

[3]Defense counsel stated at the change of plea hearing: "The element was met when Mr. Sheehan moved to Montana.  And we consider that the offense conduct, not anything predating that or pre-dating his move, which I believe was [sometime in] 2002."

contends the offense, for purposes of the Sentencing Guidelines, occurred only

when the Defendant brought the minor from Idaho to Montana in 2002.[4]

When a defendant objects to the Presentence Report, the district court is

obligated to resolve the factual dispute, and the government bears the burden of

proving the facts necessary to establish the offense base level.  Fed. R. Cr. P.

32(i)(3)(B); U.S. v. Ameline, 409 F.3d 1073, 1085-86 (9th Cir. 2005).

1. Dates of the federal offense

The offense Defendant has pleaded guilty to, Transportation of a Minor,

occurs when he transports the child across a state line with the requisite intent to

engage in sex, not when (if ever) he has sex with her.  United States v. McConney,

329 F.2d 467, 469 (2nd Cir. 1964).  Having illicit sex after the transporting seems

not a part of the federal offense.  That is a state crime.  The fact of the state crime

merely offers evidence that the federal element of intent was present at the time of

the transporting.  E.g., United States v. Saunders, 641 F.2d 659 (9th Cir. 1980).

---

[4]If he had not pleaded guilty, Defendant may have argued that charging him with one count to cover the various trips is duplicitous.  The Ninth Circuit has stated "two interstate crossings can be joined in one Mann Act count when, as here, there is evidence upon which the jury could conclude that they constituted one trip." United States v. Saunders, 641 F.2d 659, 665 (9th Cir. 1980).  Here, it would be difficult to argue that his travels from 2000 to 2003 were part of one trip, especially since he served five months in prison in 2000 and 2001.  It is also difficult to argue that his trip from New Mexico to Idaho, and then two months later from Idaho to Montana in 2002 was part of a single trip.  Under this view, Defendant might be implying the government can only charge him for one trip considering he has been charged with a single count.

The government must prove that the intent to engage in the unlawful sex was a dominant motive of the travel.  United States v. Hitt, 473 F.3d 146, 152 (5th Cir.), cert. denied, 549 U.S. 1360 (2007).

Here, after listening to the victim testify at an earlier hearing, the preponderance of the evidence appears not to show that the Defendant transported the victim across state lines with an intent to engage in illicit sexual activity prior to 2002.  Based on the offer of proof and the testimony at the hearing, sexual abuse started in 2000 in New Mexico.[5]  No evidence or reason was put forth to explain why Defendant would have transported the child from Montana to New Mexico with the intent to engage in illicit sex.  To the contrary, the Presentence Report states the family "fled Montana" after posting bail for a driving under the influence arrest.  PSR ¶ 9.  Once in New Mexico, sexual abuse began, but the Defendant did not transport the victim across state lines until 2002, when he moved the victim and her mother to Idaho.[6]  From this vantage, the federal offense

---

[5]The Presentence Report does state "inappropriate physical contact" occurred in 2000 in Montana.  The victim's testimony and government's offer of proof indicate that the sexual abuse began in New Mexico in 2000.   The PSR statement is most likely viewed as disputed and thus cannot be relied upon without further proof.  See Ameline, 409 F.3d at 1085.

[6]The Defendant was attempting to transport her to Arizona from New Mexico, but failed to cross the state line.  As such, there was no federal offense.  Additionally, after the Defendant was incarcerated in Arizona, the victim was transported to Arizona by the mother so they could be closer to the Defendant.  It seems fanciful at best to argue that the Defendant caused the victim to be transported across state lines while he was in prison so that he could engage in illicit sex with her.

did not start in 1999 or 2000 and continue until 2003.      Rather, it occurred in 2002.

      b. Relevant conduct

For the purposes of the Sentencing Guidelines, however, the offense of conviction also includes all relevant conduct.  <u>See</u> U.S.S.G. § 1B1.3.  Relevant conduct is defined as acts "that occurred during the commission of the offense of conviction," or offenses that are part of the "same course of conduct or common scheme or plan."  § 1B1.3(a)(1)-(2).

Under § 1B1.3(a)(2), the "same course of conduct and common scheme or plan" as the offense of conviction applies to offenses that cannot "readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing."  § 1B1.3 backg'd; <u>United States v. Hahn</u>, 960 F.2d 903, 910 (9th Cir. 1992).  The Guidelines state that this type of relevant conduct applies primarily to fraud and drug offenses, rather than crimes like assaults and burglaries.[7]  <u>Id.</u> at backg'd.

Nevertheless, it seems appropriate to view the Defendant's prior sexual acts

---

[7]The Tenth Circuit has explicitly stated that a § 1B1.3 "same course of conduct" analysis is inappropriate for a § 2423 conviction.  <u>United States v. Cuthbertson</u>, 138 F.3d 1325, 1327 (10th Cir. 1998).  There is a fundamental difference between the Tenth Circuit case and this one. The edition of the Guidelines in that case specifically excluded the federal offense as being applicable to § 1B1.3.  That is not the case here.

and transporting her across state lines to be a single course of conduct.  Same

course of conduct is defined as offenses that through their similarity, regularity

and time between them are concluded to be part of a "single episode, spree, or

ongoing series of offenses."  § 1B1.3 cmt. n. 9.  It applies to cases where "a single

criminal objective" leads to "essentially one composite harm to the same victim."

§ 3D1.2 cmt. n.3.  Here, the Defendant had a criminal objective to have illicit sex

with his step-daughter.  Part of this objective required him to transport her so that

his illegal behavior would not be detected, and the transporting and sex together

led to the same harm, the victim being sexually exploited.[8]  The illicit sex

combined with the transporting went from state to state and were so intertwined as

to not allow the offenses to be "readily broken into discrete identifiable units."  §

1B1.3, backg'd.  It seems therefore appropriate, despite § 1B1.3(a)(2) being

designed to apply to different cases than this one, to consider his sexual activities

with the victim in concert with the transporting to be part of the same course of

conduct.

---

[8]The Guidelines state, however, that the same harm repeated on different occasions does
not represent a composite harm (e.g. robbery of the same victim on different occasions involves,
multiple, separate instances of fear and risk of harm, not one composite harm).  § 3D1.2 cmt. n.
4.  This example seems distinct from the facts of this case.  In that example, all that is the same
are the parties and the harm, but the harm being repeated appears to be by chance.  Here, the
Defendant's objective was to ensure the harm was repeated over and over against the same
victim for years.

The Ninth Circuit says before § 1B1.3(a)(2) can apply, there must be "sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct." <u>Hahn</u>, 960 F.2d at 910.  This case involves two distinct offenses: transporting a juvenile in interstate commerce with intent to engage in criminal sexual activity and the illicit sex itself.  These offenses are similar in the sense that they involve similar conduct and the same victim.  <u>See</u> <u>United States v. Cuthbertson</u>, 138 F.3d 1325, 1327 (10th Cir. 1998).  The pattern was repeated numerous times.[9]  Temporally, these acts were carried out on a continuum: the sex was frequent, and the moving occurred when necessary.  Defendant could argue that the prison sentence severs the temporal proximity of his offenses in 2000 from those that occurred later.  This argument, however, is unavailing. The interruption was not the Defendant's choice, but instead the pattern was put on hold due to circumstances beyond his control.  It is inappropriate to view offenses as untimely when the break in the pattern was not of the Defendant's choosing.  <u>See</u> <u>United States v. Cedano-Rojas</u>, 999 F.2d 1175, 1180 (7th Cir. 1993) ("A respite is unlikely to be fatal in the

---

[9]The Defendant had illicit sexual contact with her in 2000 in New Mexico, and then tried to take her to Arizona.  The Defendant had illicit sexual contact with her in Arizona and then took her to Idaho.  The Defendant had illicit sexual contact with her in Idaho, and then took her to Montana, where he continued the sexual contact until 2005.

finding of a course of conduct if the interruption was not the choice of the players.").

The above analysis counsels that the instant offense of conviction through its relevant conduct started in 2000, when the Defendant initiated sexual contact and attempted to transport her across state lines.

Both parties agree the actual offense of conviction ended in 2002.  The Defendant, however, argues that the sex that occurred after moving to Montana was relevant conduct, as listed in the PSR ¶ 17, and therefore the offense did not end until 2005.  The sex that occurred after arriving in Montana is relevant as it substantiates the crime, and involves the same victim and harm.  The problem is at some point the sex in Montana does not leave Montana, and as such it breaks the pattern necessary for it to be a part of the same course of conduct as described above.  Therefore, it seems appropriate to count the sex as relevant conduct until late 2003, considering they moved to Montana in late summer of 2002.

B.  Should the Sentence Run Concurrently with the State Conviction?

Defendant argues that under the 2003 edition of the Guidelines his federal sentence should run concurrently with his 25 year sentence in Montana State Prisons (10 years suspended), or in the alternative that the 2001 or 2002 edition

should apply with the same result.[10]  Based on the above analysis, the instant

offense ended in late 2003, and as such the 2003 Guidelines apply.[11]

Section 5G1.3 of the Guidelines applies when at the time of sentencing the

defendant is subject to an existing undischarged term of imprisonment.  Under §

5G1.3(b), a defendant's federal sentence shall be imposed to run concurrently with

the undischarged sentence if the other sentence resulted from "*relevant conduct* to

the instant offense," and "that was the basis for an *increase in the offense level* for

the instant offense."  (emphasis added)  Otherwise, under § 5G1.3(c), "the instant

offense may be imposed to run concurrently, partially concurrently, or

consecutively to the prior undischarged term of imprisonment to achieve a

reasonable punishment for the instant offense."

Defendant argues that § 5G1.3(b) applies.  He argues that his state term of

imprisonment resulted from incest after his arrival in Montana, and this is relevant

conduct to the instant offense.  This seems correct.  Then, Defendant argues the

relevant incest conduct was the basis for an increase in the offense level.  He

---

[10]Sentencing courts should use the edition of the Guidelines in effect at the time of the sentencing unless doing so would violate the ex post fact clause.  § 1B1.1.  Here, the base offense level has increased since the time the Defendant committed the instant offense, and thus the current edition should not be used.

[11]Section 5G1.3(b) is unchanged in the 2004 edition of the Guidelines.  Therefore, if the Court were to decide the relevant conduct ended later, this would not change the result.

points to ¶ 24 of the PSR, which added two points due to the defendant being a

parent to the victim, pursuant to § 2G1.1(b)(3).  This argument is flawed, however,

because these points were added not on account of the relevant incest conduct.

The increase simply required the transporter to be a parent of the victim, and this

was satisfied by the offense of conviction itself, not the relevant conduct.  Thus,

the relevant incest conduct was not the basis for increasing the Defendant's

offense level.  That means § 5G1.3(c) applies under the 2003 Guidelines.  See

United States v. Fifield, 432 F.3d 1056, 1062 (9th Cir. 2005) (applying §

5G1.3(c)–not (b)–in part because the conduct underlying the state conviction was

not the basis for increasing the offense level of the federal offense)

C.  Did the Instant Offense Occur within 15 Years of the Defendant's two terms of
      imprisonment that ended in 1986?

Under § 4A1.2(e), criminal history points are added for any prior sentence

of imprisonment exceeding 13 months that resulted in the defendant being

incarcerated within fifteen years of the defendant's commencement of the instant

offense.  The Presentence Report, presuming the instant offense began in 1999 or

2000, assigned six criminal history points for Defendant's two convictions that

released him from prison on January 28, 1986.  See PSR ¶¶ 45, 46.  Based on the

above analysis, the instant offense occurred within 15 years of the Defendant's

release from those two sentences.  The six points were correctly added in the

Presentence Report.

D.  Did the Instant Offense Occur while the Defendant was on Parole?

The Presentence Report, pursuant to § 4A1.1(e), assigned two criminal

history points because the Defendant was on parole during the time of the instant

offense.  PSR ¶ 53.  Defendant argues, without development, that he was not on

parole during the instant offense, and therefore one point should be subtracted

from his criminal history.[12]

Defendant was released from custody on March 29, 2001, but not released

from his sentence until May 16, 2003.  At the time of release, Defendant signed a

release order that, inter alia, notified him that he was under the control of the

Department of Corrections until May 16, 2003.  Although the Defendant was not

formally under supervision, Federal Probation Officers in Arizona treat this time

between release from prison and release from sentence to be parole for the

purposes of the Guidelines.  Because the date of the instant offense is within 15

years of Defendant's release from his sentence, the two points were correctly

---

[12]The Defendant is only seeking one point to be removed because the Guidelines add two points if the instant offense was committed while on parole, and as well as two points if the instant offense was committed within two years of release from prison.  But, if both conditions are met, then only three points total are to be added.  Here, the instant offense was committed within two years of his release from prison.  So his not being on parole during the instant offense would only serve to reduce the level of points by one.  See § 4A1.1(d)-(e).

added.

## IV.  Conclusion

Based on the foregoing, I make a preliminary determination that the

Presentence Report correctly assigned the Defendant 16 criminal history points,

resulting in a Category VI Criminal History.  Accordingly, my preliminary

determination is that the sentencing range should remain 70 to 87 months.

Dated this _____ day of October, 2009.

_____
Donald W. Molloy, District Judge
United States District Court