IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE JOHN SHEEHAN,<br><br>Defendant. | CR 09–13–M–DWM<br><br><br>ORDER |

On October 28, 2009, Defendant Lawrence John Sheehan was sentenced to 180 months' imprisonment followed by a lifetime of supervised release for transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). (Doc. 38.) On December 16, 2022, Sheehan filed a motion to reduce his custodial sentence under 18 U.S.C. § 3582(c)(1)(A). (Doc. 70.) His projected release date is June 5, 2035.[1] *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed Feb. 21, 2023). The government opposes the motion. (Doc. 73.) For the reasons stated below, Sheehan's motion is denied.

**ANALYSIS**

The First Step Act gives district courts wide discretion to reduce an existing

---

[1] Because Sheehan's federal sentence was imposed consecutive to his two Montana state sentences, (*see* PSR ¶¶ 51, 52), Sheehan did not begin serving his federal time until August 24, 2022.

1

term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). Because the Sentencing Guidelines have not been updated since the First Step Act was passed, "the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam). Thus, this Court's decision turns on whether the defendant has presented extraordinary and compelling reasons for a reduction and whether that reduction comports with the objectives of § 3553(a). *See Keller*, 2 F.4th at 1284.

Here, Sheehan argues that his age and health conditions, coupled with COVID-19 risk factors, present compelling and extraordinary circumstances. (*See* Docs. 71, 74.) Ultimately, while those circumstances may exist, a sentence reduction would not be consistent with the § 3553(a) factors.

I. **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the

2

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Sheehan filed a request for relief with the warden at his facility that was denied on September 26, 2022. (*See* Doc. 71-1.) Sheehan has therefore exhausted his administrative remedies as required by statute.

## II.   Extraordinary and Compelling Reasons

While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Commission's nonbinding policy statements provide informative and illustrative examples of such reasons. One such reason is a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13(1)(A), app. n. 1(A)(ii).

Sheehan is 76 years old. (*See* PSR at 2.) He suffers from a litany of medical conditions, including PTSD from his service in Vietnam, as well as prostate cancer, chronic Hepatitis C, encephalitis, incontinence, high blood pressure, degenerative disc disease, and peripheral neuropathy. (*See* Doc. 72-1.) Due to his physical condition, Sheehan uses a wheel chair and cannot perform necessary daily self-care activities without assistance. (*See generally, id.*) He has also undergone gallbladder surgery, and, most recently, was hospitalized in August 2022 for

3

sepsis. (*See id.*) While some of Sheehan's medical issues—such as his prostate cancer and PTSD—existed at the time of his sentencing in 2009, (*see* PSR ¶¶ 70, 71–75), his medical records indicate that his overall condition has worsened over the past 14 years and he has developed new issues.

Generally, the health complications that come with advanced age are not considered an extraordinary and compelling circumstance. *See United States v. Montgomery*, 481 F. Supp. 3d 1179, 1182–83 (E.D. Wash. 2020). However, many district courts have found that defendants can also show extraordinary and compelling reasons if they show: "(1) their health conditions put them at increased risk of severe COVID-19 symptoms and (2) they are at risk of infection." *United States v. Stone*, 2022 WL 2483755, at *2 (E.D. Cal. July 6, 2022) (collecting cases). This calculus can shift if a defendant is vaccinated, although a defendant may then "offer[] evidence of an elevated personal risk of severe harm despite the protections of vaccination." *Id.* Here, there is no indication that Sheehan is vaccinated against COVID-19. But even if he were, Sheehan's age and declining physical condition place him at greater risk of developing severe illness should he contract COVID-19, *see* Centers for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 6, 2022, and accessed Jan. 4, 2023) ("A person's risk of severe illness from COVID-19

4

increases as the number of underlying medical conditions they have increases."). Specifically, "[o]lder adults are at the highest risk of getting very sick from COVID-19. More than 81% of COVID-19 deaths occur in people over age 65." *Id.* And, individuals suffering from cancer, diabetes, and mental health conditions may be "more likely to get very sick from COVID-19." *Id.* FMC Butner, the facility where Sheehan is housed, currently has one active staff case, https://www.bop.gov/coronavirus (accessed Feb. 21, 2023), and has had a high COVID-19 mortality rate compared to other BOP facilities, (*see* Doc. 71 at 14).

Accordingly, considered in combination with COVID-19, Sheehan's advanced age and serious medical conditions constitute an extraordinary and compelling reason for his release.

### III. Section 3553(a) Factors

Nevertheless, demonstrating an extraordinary and compelling reason to reduce a sentence meets only one element of § 3582(c)(1)(A). To determine whether relief is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional

treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Fundamentally, Sheehan argues that his "deteriorating health situation which merits his compassionate release from prison also makes him less likely (or even able) to commit future crimes or endanger the public." (Doc. 71 at 25.) Future threat to the public, however, is not the only relevant consideration under § 3553(a). Sheehan sexually assaulted his step-daughter over a period of five years starting when she was 12 years old. (PSR ¶ 8.) The victim became pregnant at the age of 15 with Sheehan's child and reported that Sheehan viewed her pregnancy as an opportunity to engage in sex with her daily without consequence. (PSR ¶ 16.) In her 2009 Victim Impact Statement, she further explained that Sheehan told her and her mother that an apocalypse was coming and that he was hoping that the baby would be a girl so that he would have three women of his own, "a triplicity." (PSR at 5–7.) The fear and anguish contained in that letter convey the true impact of Sheehan's conduct. The victim's more recent letter bears the same sense of terror and despair, demonstrating the enduring nature of his crime. (*See* Doc. 76-1.) While Sheehan may have moved forward, his victim has not.

To be sure, there are mitigating factors at play. Sheehan served as a United

6

States Marine in Vietnam and suffers from mental health issues as a result. (*See* PSR ¶¶ 85, 71–76.) His current physical condition is also quite debilitating, as described above. Those facts, however, do not change the calculus under § 3553(a). As it relates to Sheehan's military service and his related mental health issues, that history and those characteristics were considered when his sentence was imposed in 2009. As such, they have already been taken into consideration. Moreover, by Sheehan's own admission, at this point he has just begun to serve his fifteen-year federal sentence after serving the last decade in state prison for a separate conviction. Thus, to reduce his sentence as requested would effectively obviate his federal crime. Nor is Sheehan's argument that he could shift the cost of his care away from the Bureau of Prisons compelling. As argued by the government, whether Sheehan is in prison or released on conditions of supervision, the government will bear the cost of his care.

Finally, Sheehan argues that his physical state simply does not permit him to engage in criminal conduct. The Court is not convinced. The facts of his underlying offense show that Sheehan is, in the words of the victim, "a master manipulator" capable of shaping his reality to the detriment of others. And, despite his mental health issues, he has been "resistant" to trying medications in the past and informed his provider in November 2021 that "he was not going to see anyone else for mental health." (Doc. 72-1 at 16.) Even if he has since resumed mental

7

health treatment through the Bureau of Prisons, he has demonstrated the discontinuity of his commitment to such treatment.

Ultimately, Sheehan's original sentence remains sufficient but not greater than necessary under the circumstances of this case. Reducing his sentence as requested would denigrate the seriousness of his crimes and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

## CONCLUSION

Accordingly, IT IS ORDERED that Sheehan's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 70) is DENIED.

DATED this 23rd day of February, 2023.

Donald W. Molloy, District Judge
United States District Court